CIACCIO, Judge.
Plaintiffs, Donald and Carey Hammett, filed suit against New Orleans Diamond and Jewelry Wholesalers, Inc. and United Parcel Service, Inc. (U.P.S.) for damages caused when plaintiffs’ jewelry was lost during shipment. U.P.S. was dismissed from the suit on motion for summary judgment, and following a trial on the merits, the trial court granted judgment in favor of defendant, New Orleans Diamond, dismissing plaintiffs’ suit. Plaintiffs appealed this judgment, claiming that the trial court erred in four ways: 1) in not finding New Orleans Diamond and U.P.S. liable in solido for the loss of the jewelry, 2) in not finding New Orleans Diamond negligent, 3) in failing to award damages for mental anguish, and 4) in assigning a value of only $2,000.00 to the lost jewelry. For the following reasons, we affirm in part and reverse in part the trial court judgment.
FACTS
In May of 1983, Carey Hammett brought several pieces of jewelry to defendant’s place of business for repair. Mrs. Hammett testified that approximately fifteen pieces of jewelry were left with defendant, including a bracelet, a ring and an earring. Defendant alleges that Mrs. Hammett only brought two items, a bracelet and a ring, to the store for repair. New Orleans Diamond could not do the necessary repair work on these items as it entailed the replacement of stones, so plaintiffs’ jewelry was shipped via U.P.S. to a lapidary in New York for repair. Apparently, the jewelry was lost in shipment as it never arrived at its place of destination in New York. After telephoning defendant several times to inquire about her jewelry, Mrs. Hammett went to New Orleans Diamond in September of 1984 to re-claim the pieces whether they were repaired or not, and was informed at this time that her jewelry had been lost.
Plaintiffs originally filed suit in Civil District Court to recover for the loss of this jewelry against New Orleans Diamond alone, claiming that the ring, bracelet and earring were worth $7,550.00. New Orleans Diamond answered and asserted a third party demand against U.P.S. Plaintiffs then amended their petition to add U.P.S. as a defendant and assert the value of the three pieces of jewelry was $22,-650.00 at the time of the loss. The amended petition also included a claim for mental anguish suffered by plaintiffs as a result of the loss.
U.P.S. filed a petition for removal alleging that plaintiffs’ claim for damages for the loss of property shipped by a common carrier was governed by federal law. The matter was removed to the U.S. District Court for the Eastern District of Louisiana and docketed as number 85-1571. U.P.S. then filed a motion for summary judgment, which was granted by the federal district court on November 26, 1985, dismissing plaintiffs’ claims against U.P.S.
On December 2, 1985, the case was returned to state court due to lack of grounds for federal jurisdiction, and the matter was referred to the Office of the Commissioner. Plaintiffs’ claims against New Orleans Diamond were tried before Commissioner Charles Rivet on October 9, 1987.
After the completion of trial, the Commissioner issued a report dated October 22, 1987 recommending judgment in favor of New Orleans Diamond. Plaintiffs filed exceptions to the report which were overruled, and the Commissioner’s recommendation was made judgment of the court on January 24, 1990. It is from this judgment that plaintiffs now appeal.
In its report, the Commissioner found that the evidence indicated that the loss of plaintiffs’ jewelry was caused solely by the failure of U.P.S. to deliver it and that New Orleans Diamond could not be held responsible for acts of negligence which occurred while plaintiffs’ jewelry was in the possession of U.P.S. We disagree.
SOLIDARY LIABILITY
Plaintiffs claim that New Orleans Diamond and U.P.S. were solidarily liable for *1080 the loss of their jewelry. The Commissioner found that only U.P.S. was responsible for the jewelry which was lost in its possession. It is undisputed that New Orleans Diamond accepted plaintiffs’ bracelet and ring and transferred it to U.P.S. for shipment. Although the evidence of whether Mrs. Hammett authorized the shipment of her jewelry via U.P.S. is conflicting, both New Orleans Diamond and U.P.S. were bound to act as prudent adminstrators in safeguarding plaintiffs’ property.
When one depositary accepts the property of another, delivers that property to another for repair and the property is lost while in the possession of the repairer, both parties have the burden of exonerating themselves from the presumption of fault or negligence. When the codepositar-ies fail to do so, they are solidarily liable to the owner. Freeman v. Garcia, 495 So.2d 351 (La.App. 2 Cir.1986).
We find that U.P.S. should be held to the same standard of care as a codepositor. There is no evidence in the record to show that U.P.S. was exonerated from fault for the loss of the jewelry. Therefore, we find that New Orleans Diamond was solidarily liable with U.P.S. for the failure to return plaintiffs’ jewelry, and New Orleans Diamond is obligated for the loss of the jewelry even though it occurred while in the possession of U.P.S. The trial court was clearly wrong in failing to find these defendants solidarily liable.
NEGLIGENCE OF NEW ORLEANS DIAMOND
In addition, we find that the trial court’s conclusion that New Orleans Diamond was free from negligence to be manifestly erroneous.
Under LSA-C.C. Art. 2937, a depositary has the duty to use the same diligence in preserving the deposit that he uses in preserving his own property. However, this is not to mean that if he is careless in preserving his own property, he may also be careless, without liability, in preserving the deposit. Home Insurance Co. v. Southern Specialty Sales Co., 225 So.2d 776 (La.App. 4th Cir.1969). Rather, the depositary’s obligation is to act as a prudent administrator in safeguarding the deposited property. Once the depositor proves the existence of the deposit and the loss, there is a presumption the depositary has not fulfilled his obligation and the depositary must prove as an affirmative defense that he acted as a prudent administrator. Mercer v. Columbia Equipment Company, Inc., 409 So.2d 1285 (La.App.2d Cir.) writ denied 413 So.2d 507 (La.1982).
In the present case, plaintiffs showed that the bracelet and ring were deposited with New Orleans Diamond. Although Mrs. Hammett testified that she also deposited an earring, she was unable to produce the claim ticket for this piece, and Gregory Clark, the employee who accepted the jewelry, denied that an earring had been received. We decline to disturb the commissioner’s factual finding that plaintiffs failed to meet their burden to show a deposit of the earring.
Nevertheless, the evidence clearly shows that New Orleans Diamond was the depositary of Mrs. Hammett’s bracelet and ring. These items were subsequently transferred to U.P.S. and were lost during shipment. Although the jewelry was lost while in the custody of U.P.S., New Orleans Diamond as original depositary nevertheless had the burden to prove that it acted as a prudent administrator in safeguarding plaintiffs’ property while in its custody. We find defendant failed to carry that burden.
At trial, Gregory Clark, an employee of New Orleans Diamond, testified that he received a bracelet and a ring from Mrs. Hammett in May of 1983. He stated the bracelet was lightweight, and that he presumed it was sterling with black onyx stones. He described the ring as “a bulky fashion ring set in a yellow setting with some turquoise and coral.” Stones were missing from both the bracelet and the ring which Mrs. Hammett requested be repaired. Clark testified that he informed Mrs. Hammett that the pieces would have to be sent to another store to be repaired, and Mrs. Hammett made no objection, al *1081 though Mrs. Hammett stated that she was never informed that the jewelry would be shipped out of town.
Clark then placed each piece of jewelry in a separate brown envelope. Several days later he packaged the jewelry in one box, wrote a letter to Mr. Louis Bartholomew in New York City requesting him to repair this jewelry and also filled out a shipping ticket for these items. The record indicates that on June 3, 1983, this package containing Mrs. Hammett’s jewelry was picked up from New Orleans Diamond by U.P.S.
Both Clark and his employer, Bobby Norman, testified that New Orleans Diamond regularly uses U.P.S. to ship merchandise, although sometimes registered mail is used for important or expensive items worth in excess of $1,000.00. Clark estimated each piece of Mrs. Hammett’s jewelry to be worth approximately $200.00. Based on his valuation of the jewelry, Clark did not believe it was necessary to insure the jewelry shipment, and did not discuss the matter with Mrs. Hammett or his employer prior to shipping it to New York.
The evidence reveals that U.P.S. insures items up to $100.00 in value, and that customers must secure additional insurance for more expensive items. Further, defendant’s routine business practice when shipping jewelry out of town via U.P.S. was to declare the excess value of the piece and obtain additional insurance for items worth more than a couple of hundred dollars.
The evidence presented at trial indicates that each piece of jewelry was worth in excess of several hundred dollars. The bracelet consisted of either black onyx or rubies and rose-cut diamonds set in platinum, and the ring consisted of coral, turquoise and approximately ten small diamonds set in 18 karat yellow gold. Although Gregory Clark valued each piece of jewelry at $200.00, he was not a qualified jewelry appraiser, and in fact was employed as a sales clerk for defendant at the time the jewelry was deposited.
We find that when a depositary accepts jewelry of another which it intends to ship for repair, the depositary has a duty to ascertain the value of the items before placing them for shipment. Based on the inherent danger involved in shipping an item such as jewelry, which may be easily lost or stolen and disposed of, we find it is incumbent upon the depositary to take steps which would reasonably guarantee that the jewelry would arrive at its intended destination. Although the depositary is not the insurer of the thing deposited, a prudent administrator of jewelry belonging to another would not ship such an item without either first determining its value and then insuring the item in the event of loss or theft while in transit or by offering to the customer the option to pay for the insurance or to decline it.
In the present case, the record shows that the Hammett’s jewelry was not properly appraised before shipment, and the value of the jewelry was inaccurately assessed. Further, although defendant was aware that U.P.S. only insured items up to $100.00 in value, the excess value of the jewelry was not declared with U.P.S., nor was Mrs. Hammett given an opportunity to elect additional insurance coverage for her jewelry. In shipping this jewelry without determining whether it was adequately insured, defendant breached its duty to act as a prudent administrator to protect plaintiffs’ property and is therefore liable for the loss of the jewelry. The commissioner’s finding to the contrary is manifestly erroneous.
VALUE ASSESSMENT
Plaintiffs assert the commissioner, in his recommendation, erred in assessing the value of the lost jewelry at $2,000.00. This figure is based on Donald Hammett’s estimated value of the property made in August of 1984 after the jewelry was determined to be lost. On request of Bobby Norman, Hammett stated that he believed he had purchased both pieces of jewelry for approximately $2,000.00, although he was uncertain of their current value.
New Orleans Diamond then made a claim against U.P.S. for $2,000.00, and UPS re *1082 mitted a check to New Orleans Diamond in the amount of $100.00, its limit of liability.
Plaintiffs introduced the testimony of Morris Herman, from whom the jewelry had been originally purchased. While Donald Hammett stated that he bought the bracelet from Mr. Herman in 1965 for approximately $l,000.00-$2,000.00, Mr. Herman estimated the retail value of the bracelet to be $5,000.00-$6,000.00 at the time of trial, and the wholesale value to range from $4,500.00 to $5,200.00.
With regard to the ring, Mr. Hammett stated he purchased it for approximately $500.00-$l,000.00, and Mr. Herman testified the retail value of the ring at the time of trial was $2,200.00-$2,500.00, and the wholesale value was $1,250.00-$l,500.00.
Bobby Norman, the owner of New Orleans Diamond testified at trial that based on a drawing of the jewelry made by Gregory Clark, he could reproduce the bracelet for $600.00-$800.00 and the ring for $500.00.
Compensation for property which is lost or destroyed is the value of the property at the time of the loss. Langendorf v. Administrators of Tulane Educational Fund, 361 So.2d 905 (La.App. 4th Cir.), writ denied 363 So.2d 1384 and 364 So.2d 120 (La.1978). The only evidence presented as to the value at the time of the loss is the testimony of Morris Herman. Although Bobby Norman stated he could fabricate the jewelry for approximately $1,300.00, Mr. Norman had never seen either piece of jewelry, and Mrs. Hammett disputed the accuracy of Gregory Clark’s drawings. We find that the figures placed on the jewelry by Mr. Herman as to the approximate wholesale value of the jewelry at the time of the loss represents reasonable compensation for the lost items. Therefore, we find that plaintiffs are entitled to no less than the minimum wholesale value testified to by Morris Herman, $4,500.00 for the bracelet and $1,250.00 for the ring, for a total of $5,750.00. The commissioner’s valuation of the jewelry in the amount of $2,000.00 in his report was dicta as he had recommended dismissal of plaintiffs’ suit. In any event, we conclude that such a valuation was manifestly erroneous.
MENTAL ANGUISH
Plaintiffs also appeal the trial court’s failure to award damages for mental anguish. The record shows that plaintiffs alleged damages for mental anguish and emotional distress due to the loss of all items in their amended petition. However, although Mrs. Hammett testified the jewelry had sentimental value because they were gifts from her husband, we find no evidence in the record that plaintiffs suffered damages from mental anguish as a result of the loss. We therefore decline to disturb the trial court’s ruling on this issue.
CONCLUSION
For the above stated reasons, we affirm in part and reverse in part the trial court’s judgment. We reverse that portion of the judgment which finds New Orleans Diamond and Jewelry Wholesalers, Inc. free from negligence for the loss of plaintiffs’ jewelry. We find New Orleans Diamond and U.P.S. are solidarily liable to plaintiffs for their loss in the amount of $5,750.00. However, because of the limitation of liability applicable to U.P.S. under Federal law, and by virtue of the earlier judgment in the U.S. District Court dismissing U.P.S. from these proceedings, U.P.S. cannot be cast in judgment. We affirm the trial court’s denial of damages for mental anguish.
Accordingly, the trial court judgment is recast to provide as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Donald and Carey Hammett, and against New Orleans Diamond and Jewelry Wholesalers, Inc. in the full sum and amount of $5,750.00, together with legal interest from date of judicial demand until paid, and for all costs of these proceedings herein and in the court below.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.