510 So.2d 763 (1987)
Herman WELLS
v.
ALLSTATE INSURANCE COMPANY and Joseph Puma.
No. 86 CA 0664.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Rehearing Denied August 31, 1987.
*765 Jerome Halford, New Orleans, for plaintiff-appellant.
James Rees, III, Covington, James Morrison, Hammond, and Stephen W. Glusman, Baton Rouge, for defendants-appellees.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This suit for damages arises out of an automobile accident.

FACTS
On October 18, 1983, plaintiff, Herman Wells, was driving his automobile on North Holly Street in Hammond, Louisiana. At the same time, Joseph Puma exited a private parking lot onto North Holly Street and broadsided the Wells vehicle. As a result of the accident, Wells sustained injuries to his back and neck.
Wells had previously sustained injuries to his back on December 9, 1981, while in the course and scope of his employment. See unpublished opinion in Herman Wells v. Allstate Insurance Company and Joseph Puma, docket number 85 CA 1309, consolidated with Herman Wells v. Cap-Con International, Inc., and Liberty Mutual Insurance Company, docket number 86 CA 0092, consolidated with Herman Wells v. Cap-Con International, Inc., and Liberty Mutual Insurance Company, docket number 86 CA 0650, decided March 1, 1987, application for rehearing granted June 2, 1987.
Thereafter, on September 11, 1984, Wells filed suit for damages against defendants Joseph Puma and Allstate Insurance Company. After trial the jury determined that both Puma and Wells were negligent in causing the accident, attributing 60% of the negligence to Puma and 40% of the negligence to Wells. The jury awarded Wells $10,000.00 for his injuries, which was reduced by his percentage of fault. Costs were apportioned between Wells and defendants.
From this judgment, Wells appeals, assigning the following errors:
1. The court erred in entering judgment on the jury's finding of contributory negligence, on the fact that Wells had been travelling north on a two-way street when hit by Puma's car exiting from a private driveway crossing the opposite lane of traffic before striking Wells' automobile in the driver's door.
2. The court erred in excluding from the jury the fact that the insurer had paid all of Wells' property damage and had furnished him a rental vehicle immediately after the accident, evidencing that the insurer had no doubt as to Puma's negligence and Allstate's liability to Wells.
3. The court erred in excluding from the instant record the record of Herman Wells vs. Cap-Con International, Inc., No. 67,263 in the Twenty-First Judicial District Court, in which the court denied Wells compensation benefits because of the subsequent automobile accident. The court ignored the provisions of LSA-R.S. 13:3723, providing for introduction of other court records in the same judicial district.
4. The court erred in entering judgment on a jury verdict in which the jury accorded great weight to the testimony of the defense's medical witness, when that witness had examined plaintiff on only one occasion and for purposes of trial.
5. The court erred in entering a judgment for damages in an entirely inadequate amount for the disabling injuries sustained, particularly in view of the court's finding in Cap-Con International that Herman Wells' disability was 95% due to the automobile accident and not to his original industrial accident.
6. The court erred in taxing Wells with costs because Wells had not settled his case in an amount in excess of the jury award.
7. The court erred in assessing the cost of the jury lunch to the attorneys for the plaintiff and defendant to be shared equally, of approximately $50.00 a piece at Mike's Catfish Inn.
8. The court erred in entering judgment on a jury verdict diametrically opposed *766 to the court's findings of fact on medical disability and causation in the compensation case.
9. The court erred in failing to apply the law to the uncontroverted facts and in abdicating his judicial functions to the jury.

ASSIGNMENTS OF ERROR NOS. 2 & 3
In these assignments of error, Wells contends that the trial court erred in excluding certain evidence. Wells contends that evidence of Allstate's payment of 100% of his property damage and provision of a rental car immediately after the accident evidences Puma's negligence and Allstate's liability and should have been introduced into evidence. Wells further contends that the suit record of his prior worker's compensation case, which determined that 95% of his disability was caused by the automobile accident, should have been introduced.

A. Evidence of Allstate's payment of Wells' property damage claim

LSA-R.S. 22:661 provides:
No settlement made under a motor vehicle liability insurance policy of a claim against any insured thereunder arising from any accident or other event insured against for damage to or destruction of property owned by another person shall be construed as an admission of liability by the insured, or the insurer's recognition of such liability, with respect to any other claim arising from the same accident or event.
Further, compromise or offers to compromise are generally inadmissible to prove liability, but they may be admissible for other purposes. Launey v. Thomas, 379 So.2d 27 (La.App. 3rd Cir.1979), writ denied, 381 So.2d 1233 (La.1980). The reason for preventing the admission of offers to compromise is the danger of discouraging compromise, which is favored by the law. See Broussard v. State Farm Mutual Automobile Insurance Company, 188 So.2d 111 (La.App. 3rd Cir.1966), writ refused, 249 La. 713, 190 So.2d 233 (1966).
In the instant case, Wells seeks the introduction of Allstate's payment of his property damage claim solely as an admission that Puma was negligent. Clearly, the trial court correctly refused to admit such evidence.

B. Prior suit record

Wells reasons that the suit record in the prior worker's compensation case is admissible under LSA-R.S. 13:3723. Wells seeks the introduction of the prior suit record to establish that his injuries were a result of the automobile accident.
LSA-R.S. 13:3723 provides:
Whenever, during the trial of any suit or process, whether civil or criminal, before any of the district courts, either party may desire to offer in evidence any record, paper, or document belonging to the files or records of the district court of the parish in which the trial is proceeding, the presiding judge at the request of such party shall direct the clerk of the district court to produce such record, document, or paper, in order that it may be used in evidence. The clerk in any such case shall not have to make a copy of any such record, document, or paper, unless the case in which it is offered is appealed, in which case the transcript of appeal shall be made up from the papers themselves.
A careful reading of LSA-R.S. 13:3723 reveals that the statute is designed for the convenience of the parties in the production of evidence, but does not govern the admissibility of such evidence after it is produced by the clerk. State v. Landry, 388 So.2d 699 (La.1980).
In his brief, Wells does not articulate any law or reason to support his contention that such prior suit record should have been introduced into evidence. The prior suit record involved different parties and different issues, and the judgment rendered therein and any reasons for such judgment are not pertinent to the inquiry presented in the instant litigation. The trial judge obviously feared that the introduction of such prior suit record would have little or no probative value and would serve *767 only to unduly influence and prejudice the jury. Accordingly, we find that the trial judge properly refused to allow the introduction of the suit record from the prior worker's compensation case.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, Wells contends that the jury erred in finding him 40% negligent in causing the accident.
LSA-R.S. 32:124 provides:
The driver of a vehicle about to enter or cross a highway from a ..., driveway,..., and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.
In interpreting this statute, our courts have repeatedly held that a driver entering a highway from a private driveway has a primary or high duty to avoid a collision. This duty becomes more onerous as the hazards increase and requires a motorist to use every reasonable means available to ascertain that his entry onto the highway may be made in safety. Hardee v. St. Paul Fire and Marine Insurance Company, 445 So.2d 771 (La.App. 3rd Cir.1984); West v. Ryder Truck Lines, Inc., 218 So.2d 106 (La.App. 3rd Cir.1969), writ denied, 254 La. 130, 222 So.2d 882 (1969).
Further, such a driver is required to keep a lookout for vehicles upon the highway and to desist from entering until it is apparent to a reasonably prudent person that such can be done in safety. Cripps v. Kennedy, 364 So.2d 243 (La.App. 3rd Cir. 1978), writ denied, 366 So.2d 917 (La.1979); Duplechien v. McNabb, 260 So.2d 789 (La. App. 4th Cir.1972), writ denied, 262 La. 132, 262 So.2d 395 (1972); DiPaola v. Fernandez, 270 So.2d 893 (La.App. 4th Cir. 1972).
The trial court's findings of fact are entitled to great weight and should not be disturbed unless they are clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In the instant case, the evidence reveals that, in proceeding on North Holly Street, Wells violated no law or rule of the highway. Wells did not have an opportunity to avoid the impact because he did not see the Puma vehicle, which was in a private parking lot prior to the collision. Further, although Puma vehemently denied fault in causing the accident, the evidence establishes that Puma's vehicle emerged from a private parking lot, broadsiding Wells' vehicle, for which he was issued a citation for failure to yield. Clearly, Puma failed to perform the onerous duty imposed upon a driver entering a highly traveled highway from a private driveway. He failed to use "every means available to ascertain" that his entry onto the highway could be made with safety.
Therefore, the evidence does not support a finding that Wells was guilty of any negligence contributing to the accident. The jury was clearly wrong in finding Wells 40% negligent.

ASSIGNMENTS OF ERROR NO. 4, 5 & 8
In these assignments of error, Wells contends that in awarding him only $10,000.00 in damages, the jury obviously determined that Wells sustained only minor injuries to his neck and back as a result of the automobile accident and that his more serious back injuries were the result of his prior work-related accident. Wells contends that in reaching this conclusion in the instant case, the jury erred in not assessing greater weight to the testimony of Dr. David Jarrott, plaintiff's treating physician, than to the testimony of Dr. Richard Levy, a physician who examined plaintiff on only one occasion. Wells further contends that the trial court erred in rendering the instant judgment because, in its prior judgment in the worker's compensation case, the court determined the exact opposite, namely that Wells' injuries were caused by the automobile accident.

A. Testimony of Treating vs. Non-treating Physician

It is well settled that the testimony of the treating physician is entitled to greater weight than the testimony of a physician who examines the patient only once or twice. Berthelot v. Imes, 459 *768 So.2d 1384 (La.App. 1st Cir.1984); Cason v. Diamond M Drilling Company, 436 So.2d 1245 (La.App. 1st Cir.1983), writ denied, 441 So.2d 1221 (La.1983); Lockhart v. Pargas, Inc., 271 So.2d 664 (La.App. 1st Cir. 1972), writ denied, 273 So.2d 844 (La.1973). However, the weight afforded such testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based. Walker v. Marcev, 427 So.2d 678 (La.App. 4th Cir.1983), writ denied, 433 So.2d 182 (La.1983).
Further, the reason for the preference of a treating physician's testimony is that the treating physician is more likely to know the patient's symptoms and complaints due to repeated examinations and sustained observations. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985).
In reviewing the factual findings of the trial court, we do not disturb such findings absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed unless such factual conclusions are clearly wrong. Percy v. Perkins, 468 So.2d 815 (La.App. 1st Cir. 1985), writ denied, 475 So.2d 355 (La.1985). However, when the trial court relies upon depositions, the rules of Canter v. Koehring Company, supra, and Arceneaux v. Domingue, supra, do not apply because the trial court is unable to observe the demeanor of the witness and the trial court is in no better position to assess credibility than the appellate court. In such a case, the appellate court must determine the sufficiency and the preponderance of the evidence. Dickerson v. Zurich-American Insurance Co., 479 So.2d 571 (La.App. 1st Cir.1985); Gould v. State, Louisiana Department of Corrections, 435 So.2d 540 (La.App. 1st Cir.1983), writ denied, 438 So.2d 1107 (La.1983); F & S Offshore, Inc. v. Service Machine & Shipbuilding Corporation, 430 So.2d 1167 (La.App. 1st Cir. 1983).
In the instant case, Dr. Jarrott testified by deposition, and Dr. Levy testified at trial. Dr. Levy testified that he has been a medical doctor for 39 years; a board certified neurosurgeon for 29 years; the chief neurosurgeon at various facilities for 33 years; a medical advisor to Administrative Law Judges for 28 years; and a professor of neurosurgery at both L.S.U. and Tulane for a total of twelve years.
Dr. Jarrott's deposition revealed that he has been a medical doctor for 14 years and a board certified neurosurgeon for only the last five years. Dr. Jarrott did not attest to any other accomplishments.
The jury could have concluded that Dr. Levy's qualifications and experience exceeded that of Dr. Jarrott.
Moreover, Dr. Levy and Dr. Jarrott do not dispute one another's factual findings from their respective examinations; their dispute is limited solely to the medical conclusions drawn from those findings.
Dr. Levy opined that Wells' injuries, and any resulting disability, were caused by his work-related accident. Dr. Levy testified that Wells had suffered nerve damage prior to the surgery, that Dr. Jarrott failed to correct the cause of the problem, and that if he had, Wells would have been free of pain prior to the automobile accident.
Dr. Jarrott's deposition, on the other hand, revealed that, although he attributed ninety to ninety-five percent of Wells' current disability to the automobile accident, if Wells had sustained irreversible nerve cord damage as a result of the work-related accident, Wells could continue to have intermittent episodes of muscle spasms and low back pain. He further admitted that Wells was never able to return to work following his work-related accident.
After carefully reviewing all of the evidence under the appropriate standard, we find that the jury could have concluded, and did not err in concluding, that Wells suffered only minor injuries to his neck and back as a result of the automobile accident for which the $10,000.00 award is adequate compensation.

*769 B. Inconsistency of Verdicts in Worker's Compensation Case and Automobile Accident Case

It is equally well settled that the burden of proving both the existence of injuries and the causal connection between them and an accident rests with the plaintiff. Such proof must be shown to a legal certainty and by a reasonable preponderance of the evidence, a mere possibility is insufficient. Boudreaux v. Terrebonne Parish Police Jury, 477 So.2d 1235 (La. App. 1st Cir.1985); Stevens v. Gulf American Fire & Casualty Company, 317 So.2d 199 (La.App. 1st Cir.1975), writ denied, 321 So.2d 363 (La.1975).
In the instant case, the jury concluded that Wells did not establish that his current injuries were caused by the automobile accident. The litigation involving the worker's compensation action is not pertinent to our inquiry in the present case. Each case must stand or fall on its own merits. Wells' success or failure in each case must be adjudged on the evidence adduced in that case and should not depend upon the resolution or facts adduced in another case. Wells may have sustained serious injuries to his back; however, in the instant case he was unable to prove by a preponderance of evidence that his injuries were caused by his automobile accident.

ASSIGNMENTS OF ERROR NOS. 6, 7 & 9
In these assignments of error, Wells contends that the trial judge erred in casting him for a portion of the court costs, including lunch for the jury.
LSA-C.C.P. art. 1920 provides that:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Assessment of costs lies within the discretion of the trial court, and unless there is an abuse of that discretion the assessment of costs will not be reversed. Long v. Panther Airboat Corporation, 453 So.2d 304 (La.App. 1st Cir.1984); Hall v. Mid-American Casualty Company, 413 So.2d 640 (La.App. 1st Cir.1982). When a prevailing party is taxed with costs of litigation, it is usually because that party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant. Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5th Cir.1984), writ denied, 449 So.2d 1359 (La. 1984); Bowman v. New Orleans Public Service, Inc., 410 So.2d 270 (La.App. 4th Cir.1982).
In the instant case, there is no showing that Wells caused costs to be incurred pointlessly or engaged in other conduct justifying the assessment of costs against him. The ruling of the trial court in assessing costs to Wells appears to be based upon the fact that the jury awarded Wells an amount which was less than Allstate's pretrial offer to compromise. The "best interests of justice" are not served herein by casting Wells for costs simply because he failed to settle with Allstate prior to trial and because the jury subsequently returned a verdict for less than the trial settlement offer. Indeed, under the facts of the instant case, the trial judge erred in inequitably and unjustly assessing Wells for costs.
Therefore, we find that the trial judge clearly abused his discretion in assessing costs to Wells, the prevailing party.

CONCLUSION
For the above reasons, the judgment of the trial court finding Wells 40% negligent and reducing his award by the percentage of fault attributed to him is reversed. The judgment is also reversed insofar as it casts Wells for costs. In all other respects, the judgment of the trial court is affirmed. All costs in both the trial and appellate courts are assessed against defendants Puma and Allstate.
*770 REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.